The first case today is number 24-1010, United States v. Guillermo Vasquez-Landaver. At this time, would counsel for the appellant please introduce himself on the record to begin. Before you begin, let me just make sure. Judge Selya, can you hear us? I can hear you very clearly. Okay. We can hear you as well. All right. Go ahead. Chief Judge Barron, Judge Selya, Judge Rickleman, my name is Robert Andrews. I represent the appellant in this matter, Guillermo Vasquez-Landaver. Before I begin, I'd like to explain I have an injury that makes it difficult for me to stand still. So if I'm moving around, I hope the court will understand.  My other issue is I would like to reserve two minutes for rebuttal. You may. May it please the court, I'd like to start by addressing the standard of review here. The reason that I want to start with the standard of review is I agree with the government that it is clearly erroneous. The problem is, is try as I might, it's going to sound like I'm asking this court to do a de novo review with respect to how the district court chose to analyze the intent problem that occurs in this case. And ordinarily, if we were addressing a drug quantity question under the guidelines, it would be subject to de novo review. But because this is an intent question, I think that it is legitimate to say this is a factual issue with clearly erroneous standard. But I don't think that that means that the court can't address or shouldn't address the law that forms the basis of that decision. And the court's recent concern over how drug quantity is calculated seems to be applicable here. For me, I'm not certain, Mr. Constable, that I understand, Mr. Adams, what you mean by that. This isn't like any other clear case. The question here is whether you can convince us that we should have a strong and firm belief that the finding made by the district court finding the intent of this case is unreasonable or unsupported by the record. I mean, why overcomplicate it? Well, I don't want to say it's an overcomplication. Under the state law under which the charges or the new criminal conduct was based, there's a, I want to call it a condition precedent, for the legitimate inference that there was intent to furnish. Why is that a condition precedent as opposed to just a means by which it can be proved? I don't read the main law or the state law there to be saying that in the absence of that quantity, there's no other possible means of proving the furnishing intent. That is true. That is how the main Supreme Judicial Court interprets the law in that respect. But the question is, is it a legitimate inference? The government's argument is that this is protected or the district court's decision is protected by the standard of review here. My suggestion is that it's that law that there has to be more than two grams that allows the court to have that legitimate inference. I guess that's, go ahead. Counsel, I thought, though, that the district court here made alternative findings and concluded that he would have found intent even putting that sort of inference aside. And I know in your brief, one of the arguments you made was that the, your client's question, do you like cocaine, you know, shouldn't have been enough. But the way that I read the district court's decision, he seemed to be relying on the overall circumstances of the interaction, not just those five or six words. So can you sort of address that? Because that is an alternative basis for the district court's ruling here, and it seemed to not just be about those five or six words. I can, Your Honor. So there are really three bases. One is the amount of cocaine, its packaging, and that question. Well, the question on its own doesn't support a finding of intent. I believe, and one of the arguments here from my perspective is that the inference, why else would you ask that question, isn't supported by the question itself. You might ask that question for a variety of reasons. He was maybe just trying to make small talk. I mean, I get it. It seems weird, but he's a man who's been incarcerated for a long time and may not understand social sort of cues in that respect. Isn't it for the district court, in the context before it, to decide what those words are intended to mean? Well, yes, but how far can you stretch those words before they become illegitimate? The context here is that he has the special packaging of the product at the time he's asking the question. I think the context is that in his car he has a plastic bag in his jacket pocket that has eight small individually wrapped portions of cocaine. The problem is we have no testing, no sampling with respect to the amount of cocaine. But now we're on to, this is the point about, and I guess I'm just not fully understanding your argument. One thing you could be saying is because of the language of the permissible inference in the main law, absent evidence of that amount being present, there's simply no way to prove furnishing. I don't take you to be saying that. I'm not saying that. Okay, so then if we have some amount of cocaine wrapped individually in the way that there's testimony is wrapped by people who generally like to furnish, plus the question, why isn't that enough such that it's not clear error to conclude with that combination of facts it wasn't clear error? So I don't believe that it's packaged in a way to suggest furnishing. I think it's packaged in a way that you buy it. I think that this is a small total amount, even if we were to credit the scale at the police station, that this is really just personal use amounts that he had in his jacket pocket. But aren't they two sides of the same coin? If it's packaged in the way that you buy it, as you say, then it's also packaged in the way that it is owned. That is correct, but the question is personal to Mr. Vasquez Landaber. Does he have the intent at that moment of possession? If you add the question in that context where he has things that are packaged that way, I understand your point. You would find differently. That is correct. That's not our question. Our question is, is it clear you have to find that way? And can it be supported by the evidence? Yes. And I think that's why the state law is so important. But counsel, isn't the definition under the state law that just if he gave the cocaine, it would have been furnishing? Yes. So, again, just looking in the context, he's in a car, in a parking lot, under circumstances that he says he wants to take this woman on a date, whatever that may mean. He asks her if she wants cocaine. Why is the district court's overall finding here clearly erroneous, putting everything together? So the issue here is at that moment when he's possessing the cocaine or he's having the conversation with the woman, does he have the intent to furnish? And because it has to be both with possession and the intent to furnish at the same time for it to be the crime of furnishing and a felony under Maine law, that is why it's not reasonable in my respect. Thank you. I have three questions. Thank you, Your Honor. At this time, would counsel for the appellee please introduce herself on the record to begin? May it please the Court. Good morning. My name is Lindsay Feinberg. I'm appearing on behalf of the government this morning. Judge Singal did not clearly err. Since we're all on the same page about what the standard of review is here, there were three factual findings that were made by the district court in support of its conclusion. And those, whether viewed in isolation or totality, make it clear that Mr. Vasquez-Landever intended to furnish cocaine to the woman he propositioned in a motel parking lot. Taking those findings in turn, Judge Singal first relied upon Mr. Vasquez-Landever's own words, do you like cocaine? And as Judge Rookman pointed out, it was not these words in isolation. Rather, it was the surrounding circumstances. Mr. Vasquez-Landever approached a woman in a motel parking lot, asked her for a date, asked her for her phone number, proceeded to call her phone before she could leave in order to make sure it was the correct phone number, and terrified her to an extent that when she saw someone else in the parking lot, she pretended that person was her friend and ran inside and called authorities. So this was not a, how would one say, a typical encounter on the street with someone. Rather, she felt, and it's pretty clear from the testimony of the officer who interviewed her immediately after, that Mr. Vasquez-Landever was not going to allow her to leave had there not been someone else in the parking lot. And in the context of do you like cocaine, as I believe Detective Stackpole testified, why would you offer someone or ask someone do you like something if you didn't intend to give it to them? And of course, we know from the record that in fact, Mr. Vasquez-Landever did have cocaine with him. He had seven Dominican ties that were in his jacket pocket that were in a larger plastic bag. And that was the second factual finding that Judge Singel made here. He talked about not just the way in which the drugs were packaged, but where they were located, meaning that they were located in a location that were readily accessible to someone who was a drug dealer, namely on their person or near to their person, and also that they were packaged in a way that drug traffickers typically package drugs. The larger outer bag and what both law enforcement officers who testified described as indicative of drug distribution, the packaging materials. But counsel, wouldn't that just be the way it was bought then? As sort of Judge Selye said, why isn't all of that equally indicative of somebody who just purchased it? And that's what brings us back to the standard of review Judge Rickleman. So when there are competing but plausible explanations, the district court can't clearly err in choosing one over the other. So we have to defer to what Judge Singel viewed here in looking at the evidence before it in terms of why. What would support treating it as evidence of an intent to transfer it rather than just evidence that's how he bought it? Well, in the view on this record, Judge Barron, what we have is both the way it was packaged and where. I don't think you're taking the position that if he hadn't asked the question, or are you, just the possession of baggies in that thing without evidence of how much the quantity total was. Would you say just possessing them in that manner is enough to show furnishing intent? No. I think you have to look at the totality of the circumstances. Okay. So what is it that tips it? Is it the question? I think it's the question and the surrounding circumstances of how it all transpired along with the amount itself, the permissible inference bit of it under Maine law. And on the amount issue, that's because of what the scale registered showed and what it's plausible to think the packaging could have reasonably weighed? Yes, Your Honor. That's correct. And there were two photographs, I think. The government included them in our addendum to set forth what those exhibits looked like so the court can look at which single had before it in terms of what was included. But is there anything in the record that gives us any insight into what the weight of the packaging is? Only the testimony of the officers. The law enforcement officers both testified during their examinations about, based on their training and experience in investigating drug cases, that it would be a small amount of the packaging materials because the plastic bags, the Dominican tie, is simply the corner of a small plastic bag. And that drug traffickers... And then just help me with the logic. If we had that it's a small amount of it and it registers, what was it, 7? 7.69 grams, Your Honor. And the relevant grams are 2? Yes, Your Honor. So I guess you're saying that testimony has to mean it's at least less than half of the weight. Is that the idea? I believe one of the officers estimated that it was approximately a gram per package which would be consistent with his training and experience as a law enforcement officer and the residual weight would be attributed to either the packaging materials or one of the packages being heavier light. And that's the testimony in the record. And so just doing the math, there's no way that that product itself could be less than 2 grams? I think that's correct, Your Honor. And it's also consistent with Judge Singal's finding that it's common sense. So in Judge Singal's experience of doing a large volume of drug trafficking cases over the course of his career, looking at the testimony that was given by the officers before him, and then considering it in light of the documentary evidence, the photographs that were put before him, I think he actually called it common sense in the record, that it was common sense that the drugs would not weigh less than 2 grams and the packaging materials would weigh more than 5.69 grams. Just on the standard of review, do you take our precedent to be clear that the standard of review is clear error rather than de novo? Yes, Your Honor. I think the standard of review is clear error both for the three underlying factual findings that Judge Singal made under this Court's precedent and also the finding that Mr. Vasquez-Landover violated his supervised release. It's that last part, though, that I'm a little – I mean, I understand that – what is the weight of the packaging? That's just a historical fact, clear error. What was the import of the question? Was he asking her to use it or not use it? I could see that's a clear error point. But ultimately, whether the evidence suffices to show an intent to furnish, is your view that's clear error also as opposed to de novo? Perhaps I'm misunderstanding the Court's question. Let me restate what I think the question is, and if I'm wrong, please correct me, Chief Judge Brown. Is the Court's standard clear error with respect to the ultimate finding as to distributive intent? Yes, that is the Government's. Do we have case law saying that? Not limited to distributive intent, no, Your Honor. But I believe in the Government's brief in the standard of review section, there is a case that I cite for the proposition that not only are the underlying factual findings reviewed for clear error, but the determination as to whether or not a violation has occurred. We just, I mean, I know this keeps coming up in our case law, where these ultimate application of law to fact questions is a de novo because it's really just a sufficiency question. And then the historical facts, obviously that is a fact question of which there's clear error. And when you get to intent, it gets complicated as to whether you're then talking about a historical fact or the ultimate question. But I take it here, if the fact question of what's the import of the question were that he was asking her, would she like some cocaine, it's not that difficult to then get to the conclusion if that's true. Just like if the historical fact question of what does the cocaine weigh in this case, more than two grams, both of those turn out to go in your favor. Even on de novo, you'd win on the furnishing, wouldn't you? Well, that's ultimately up to the court. I mean, the government thinks that we can satisfy either standard. I understand, but I'm in your... Yes, no, I... Your argument is not limited to clear error on the ultimate question. No, Your Honor, it's not limited to clear error. We believe that we prevail under any standard review. However, it's the government's position that this court's precedent, at least at this point in time, applies clear error review to the ultimate determination as to whether she presented... We recently had a case come out in which we talked about how on these sufficiency questions, there can be gradations if it's more fact, and I think the Supreme Court has started to talk this way. If it's more facty, then maybe there's more deference, but it's still a legal question because you're applying law to fact, et cetera. That is certainly true, Your Honor, and I think this case is actually indicative of sort of what we're asking district courts to do in the context of a supervised release revocation, which is look at the evidence that's put before it. Here, the district court had three witnesses testify. I think there were seven exhibits, and assess that in getting at a question that maybe is not just strictly facty, but there's some law to it, too. But at least as the law stands today, I don't think there can be any real dispute that Judge Singel got it wrong. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Again, my name is Robert Andrews. I represent Guillermo Vasquez, land neighbor. I'd like to address three things. First, Chief Judge Barron, there is a case. In my review for today's argument and sort of trying to figure this out, there is a First Circuit case that says intent is exactly as you described it, and that those cases that require You're reminding me of what that case is. Well, so here's the problem. The problem is I forgot to write down the citation. I can put it in a 28-J letter. Between the two of us, we should be able to come up with it. I hope so, Your Honor. The other issue is, from my perspective, is, is it plausible? I think the idea that the packaging weighs something and it doesn't get it below two grams, I believe that's conclusory in the same way that I think that if you extend the statement, that's also conclusory. Right? And if we were to analogize this under a 12B6 with respect to plausibility, I think the court would have to dismiss that. Counsel, wasn't there, and tell me if I'm wrong, but wasn't there evidence that it would really be impossible for the packaging to weigh more than the contents? I don't believe that there was evidence to suggest that it was impossible. That was the conclusion that Judge Singel made based on his experience. I understand that. I disagree with it. No, no, no. I'm just saying is that your understanding of the record is that that's a conclusion that Judge Singel made based on his experience in drug trafficking cases. Yes. I believe that's a conclusory statement on his part. What about the testimony that said it was a small amount, the packaging? I mean, on what basis can the police officer say, in my experience, he's not someone who is working in a lab. He's not someone who just his daily routine is to sample cocaine packages and weigh them. From my perspective, I don't see how that is a conclusion. You said one thing before you sit down, because it seemed in tension with I thought what you had said earlier. You said that if it doesn't weigh two grams, that's dispositive. I believe it is. I thought, I understand that that's dispositive of whether you get the benefit of the inference, but I didn't read Maine law to be that if it's below two grams, it cannot be furnishing. And you shouldn't. So you're not taking that position? I'm not. I'm just saying that even in its totality, even in its totality, it doesn't get to the standard. And this Court has recently at least been applying some pretty strict standards to drug quantity, and that's what I'm asking be applied here. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.